UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ROGER KNOX )<br>)<br>)<br>Defendant. )<br>) | Criminal No. 18-CR-10385-NMG |

GOVERNMENT'S RESPONSE TO MOTION BY DEFENDANT ROGER KNOX

The Government respectfully submits this response in opposition to Defendant Roger Knox's motion to reopen the detention hearing and to reconsider this Court's prior order of detention pending trial. For the reasons set forth below, Defendant fails to satisfy the high threshold needed to reopen the detention hearing. Further, any reconsideration of this Court's earlier decision should procedurally be considered in an appeal to the District Court. Finally, the evidence against Defendant is strong and his expected sentence is lengthy; as a result, Defendant continues to be a flight risk necessitating detention pending trial.

Case Background

On or about October 3, 2018, Defendant Roger Knox ("Defendant") was arrested at Boston's Logan International Airport pursuant to an arrest warrant issued by this Court. The warrant was issued based upon a criminal complaint charging Defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and 17 C.F.R. Section 240.10b-5, as well as conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371. As detailed in the complaint, for a period of more than three years, Defendant operated an asset management company in Switzerland – Silverton, later known as Wintercap

(referred to herein collectively as "Silverton") – that systematically engaged in securities fraud. In essence, clients of Silverton secretly owned large blocks of stock as part of an illegal "control group." These clients transferred the stock to Silverton, where Defendant sold the stock on his client's behalf as part of pump-and-dump schemes. Defendant then transferred the securities fraud proceeds back to the control groups using a complex and elaborate money laundering scheme involving the WB21 money transfer network.

In total Defendant directed the trading of more than 100 stocks sold through Silverton as part of pump-and-dump schemes that generated approximately $164 million in securities fraud proceeds. Defendant owned Silverton, he directed the trading, and the $164 million in securities fraud proceeds passed through brokerage and bank accounts that he controlled.

Defendant was indicted by a federal grand jury on October 23, 2018 on the same charges as set forth in the criminal complaint. The next day, a detention hearing was held before this Court. The parties proceeded by way of proffer in the detention hearing, and the Government submitted seven exhibits to the Court in support of its motion for detention. See 18 U.S.C. Section 3142(f)(2)(B)(rules of evidence do not apply at detention hearings).

On November 1, 2018, after hearing the evidence, this Court entered an order of detention pending trial. See Doc. No. 23. This Court determined, by a preponderance of the evidence, that no "condition or combination of conditions of release will reasonable assure" that Defendant appears in Court. In support of that conclusion, the Court determined that: the weight of the evidence against Defendant was strong; Defendant was subject to a lengthy period of incarceration; and, that Defendant lacked family or other ties to the United States. Further, the Court wrote:

> The court's decision is based on the particular circumstances of this case, where Mr. Knox, who is a British citizen and was living in France and Switzerland at the time of his arrest in Boston, is charged with a conspiracy to commit securities fraud and committing securities fraud. The government alleges that Mr. Knox is responsible

for generating over $164,000,000.00 in illicit proceeds in connection with a conspiracy that lasted at least five years. The conspiracy allegedly involved numerous co-conspirators in several countries. According to the government, the fraud was blatant, was perpetuated over a long period of time, and utilized sophisticated means.

The government's evidence against Mr. Knox is strong and he faces a very substantial advisory guideline range. At the detention hearing, the government admitted into evidence text messages exchanged with coconspirators in an encrypted app that demonstrate that Mr. Knox was knowingly violating the securities laws, and also show that in recent months, Mr. Knox was aware of the government's investigation of his actions and was avoiding traveling to the United States, in order to evade arrest.

On advice of counsel, Mr. Knox refused to answer any questions posed by Pretrial Services regarding his employment since 2013, nor would he disclose any information about his assets. Even though certain of Mr. Knox's assets, (over $36,000,000.00 in equities and $12,000,000.00 in cash, located in banks in Canada, Malta, Mauritius, Switzerland, the United Arab Emirates, and the United States) have been frozen in connection with a civil case against him filed by the Securities and Exchange Commission, the government believes that he has other assets (because, for example, when he was arrested he was in possession of cards from certain banks of which the government previously was unaware). While the court appreciates that Mr. Knox has a Fifth Amendment right, nevertheless, his assets are relevant to whether he has the ability to fund flight from the United States and whether the surety he has offered to post is meaningful.

<u>Defendant's motion should be denied because it does not meet the high threshold warranting re-opening the detention hearing, and because Defendant's motion is, in essence, an appeal from this Court's prior order of detention.</u>

Defendant styles his brief as a motion to "reopen the detention hearing and for an order granting" him "pretrial release under such conditions as the Court directs." Title 18, United States Code, Section 3142(f)(2)(B) provides the standard for reopening a detention hearing, which is the primary relief requested here by Defendant. That section states that the detention hearing may be reopened at any time before trial if the Court finds that "information exists that was *not known to the movant* at the time of the hearing and that has a *material bearing* on the issue whether there are conditions of release that will reasonably assure the appearance" of the defendant at trial. Defendant's motion fails to meet both prongs of the statute.

Here, in arguing that reopening the hearing is proper, Defendant primarily relies upon the fact that he now chooses to disclose his assets to the Court. As a threshold matter, Defendant's decision to disclose his purported assets does not qualify as new information that warrants reopening the hearing. Defendant knew about these assets at the time of the detention hearing in October. Defendant simply chose not to disclose these assets at that time. See United States v. Dillon, 938 F.3d 1412, 1415 (1st Cir. 1991) (in denying defendant's motion to reopen the detention hearing based on additional evidence that the defendant wanted to present, the Court strictly construed 3142(f) and held that this was not "new information" within the meaning of Section 3142(f) as it was known to the defendant at the time of the initial detention hearing); United States v. Soto, 2017 WL 3705797 (D. Mass. Aug. 25, 2017) (denying motion to reopen hearing based on sudden availability of real property where the defendant made no showing that the information was unknown to him at the time of the original detention hearing). Accordingly, given that Defendant now chooses to disclose assets that he knew about at the time of the first detention hearing, Defendant cannot meet his burden to reopen the hearing under the governing statute.

Second, even if Defendant can show that the information about his own assets was unknown to him at the time of his detention – which he does not and cannot – he cannot meet the second prong of the statute, which requires him to prove that the new information has a "material bearing" on the issue of detention. Without getting into specifics, counsel for Defendant has disclosed to the Government multiple bank accounts located in foreign countries, as well as 12 properties – with more than $2 million in home equity – that are located in countries such as France, Switzerland and the United Kingdom. Clearly, if Defendant wanted to flee, he would have numerous locations in which to live while the Government pursued extradition.[1] Accordingly,

---

[1] Extradition from countries such as the United Kingdom and Switzerland is difficult.

disclosure of Defendant's assets only heightens the need for pretrial detention in this matter, and surely does not have a "material bearing" effecting release.

Finally, while the purported basis for Defendant's motion is his newfound commitment to disclose his considerable assets, the brief in support of said motion essentially seeks to re-litigate the exact issues raised, considered and decided by this Court during and after the October 24, 2018 detention hearing. Specifically, the brief: takes issue with the Government's characterization of the evidence and proposes essentially the same conditions (with a $600,000 bond secured on his friend's property) that were proposed and rejected by the Court at the detention hearing.

Under the law, if a Defendant seeks review of an order of detention, the proper remedy is not a motion for reconsideration, as Defendant has filed here, but rather an appeal to the District Court judge pursuant to Title 18, United States Code, Section 3145(b). Should Defendant appeal his order of detention, he will be entitled to a full *de novo* review of this Court's order of detention by Judge Gorton. See, e.g., United States v. Oliveira, 238 F.Supp.3d 165 (D. Mass. Feb. 24, 2017) (Judge Gorton ruled that pursuant to 18 U.S.C. Section 3145(b), "district courts have jurisdiction to review a detention order imposed by a magistrate judge. When a district court reviews the findings of a magistrate judge with respect to pretrial detention, it must engage in de novo review of the contested order."); United States v. Gennaco, 834 F.Supp.2d 38 (D. Mass. 2011) (same). Defendant cannot simply escape district court review by styling his motion as a motion for reconsideration. For these reasons, Defendant's motion should be denied without a hearing.

The evidence against Defendant is strong, and the Government is prepared to proceed to trial.

The strength of the evidence was one of the factors that led this Court to enter an order of detention. Indeed, the evidence against Defendant is strong. In addition, to documents, e-mails

and bank records, the Government has multiple cooperating witnesses who will testify to Defendant's criminal activities.[2]

Moreover, Defendant himself recognized that his dealings were not only illegal but could also subject him to a lengthy prison sentence if he were to come to the United States. As Defendant explained in one text message to a cooperator, "For my clients and my own freedom to operate it is prudent to make travel plans wisely. I will therefore not route via USA, either Canada or Mexico are available." This text message was introduced into evidence at the October 24, 2018 detention hearing as Exhibit 4, as is reattached hereto in part as Exhibit A.

Notably, Defendant, in sending this message to the cooperator, included a web link to a Department of Justice press release for Gregg Mulholland. Mulholland occupied a similar criminal niche as Defendant - he sold stock transferred to him by control groups engaging in pump and dump schemes. The title of the press release stated, "[o]rchestrator of more than 40 pump and dump schemes and secret owner of offshore brokerage firms pleads guilty to $250 million money laundering scheme." The press release noted that Mulholland faced up to 20 years in prison. Of course, this single text message is important because: 1) it shows that Defendant knew and believed that what he was doing was illegal, 2) that Defendant would not travel to the United States for fear of imprisonment, and 3) that he was actively taking steps to avoid the United States because of his fear of getting caught.

With this in mind, Defendant's argument in his current motion that the "exhibits offered by the government at the detention hearing nowhere suggests Knox was aware of any pump and

---

[2] The Government recognizes that discovery is voluminous in this case. As such, the Government has offered to meet and confer with defense counsel as part of a "reverse proffer," highlighting some of the evidence that the Government intends to use at trial. Further, the Government does not oppose setting a trial date so that Defendant, as well as defense counsel, realize that Defendant's pre-trial detention will not continue indefinitely.

dump scheme or any other illegal activity," is simply wrong. Defendant, in his own communications, was well-aware that he was facilitating a large-scale pump and dump operation, which is why he refused to travel to the United States.

Similarly, Defendant asserts that the Government's exhibits did not "demonstrate that Knox is likely to engage in the obstruction of justice." To the contrary, Government's Exhibit 3, which is reattached hereto in part as Exhibit B, coupled with witness statements, indicate that when Knox learned of the Securities and Exchange Commission's investigation into the EPTI pump and dump, Knox, together with others, conspired to change the beneficial ownership of the nominee shareholders of EPTI in order to obstruct the SEC's investigation. See pages 20-21 of October 24, 2018 hearing.

Finally, the Government has obtained recorded telephone calls of Defendant from the Plymouth County Jail. In these telephone calls, the Government believes that Defendant has essentially conceded his involvement in the charged crimes, but takes issue with the Government's characterization of him as a leader of a large-scale securities fraud network.

As examples, Defendant uses a series of analogies on the phone to describe his role as a service provider to securities fraudsters. In one call, Defendant uses the analogy of a car race, telling his friend, "I'm not the race driver. I'm the guy – filling up the tank and, you know … doing the cleaning the windscreen wiper." Knox continued on, "They're saying I'm the Gordon Murray or the head of, you know, McLaren. You know, "Yeah, he's a kingpin, the lynchpin. He's right up there." Knox countered that that was not true, stating "he's the guy lifting the barrier at the … car park." In that same call, Knox compared himself to being a "roadie" in a band, where the band could play without him, but could not play without a "drummer."

As another example, Knox used a hockey analogy to once again tell his friend that he was not the leader of the criminal activity; instead, he serviced the criminals. Knox stated that he is the "guy that's kind of the --- the guy, you know, sharpening the skates in the back office of the hockey rink," and he is "not the guy out there scoring the goals." Knox and his associate then discussed the two pump and dump schemes mentioned in the Indictment – EPTI and CURR – with his associate stating that they should not discuss details on the phone because "this is being recorded and could be used against you." Knox's associate then went on to discuss how with respect to EPTI and CURR, the evidence against Knox was strong ("two is kind of – looks like it's already been established, they don't need your help to say –"). Knox responded, "correct," and then Knox and his associate discussed how, with respect to the other 48 stocks at issue, the evidence was not as strong.

Finally, the Government's calculation of the sentencing guidelines for Knox was accurate (see pages 10-11 of the October 24, 2018 hearing). Knox does face a lengthy sentence if convicted. Simply put, Defendant was at the very center of a large-scale scheme that generated more than $164 million in illicit securities fraud proceeds. This amount of prison time gives Knox every incentive to flee.

## CONCLUSION

For these reasons, Defendant's motion for reconsideration of the Court's order of detention and to reopen the detention hearing should be denied without argument.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   /s Eric S. Rosen
ERIC S. ROSEN
Assistant United States Attorney

Date: April 23, 2019

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

    /s Eric S. Rosen
ERIC S. ROSEN
Assistant United States Attorney