

**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

August 30, 2019

John Pappalardo, Esq.
Mark A. Berthiaume, Esq.
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110

      Re:    United States v. Roger Knox
                Criminal No. 18-10385

Dear Messrs. Pappalardo and Berthiaume:

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Roger Knox ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    Change of Plea

At the earliest practicable date, Defendant will plead guilty to Counts One and Two of the Indictment: conspiracy to commit securities fraud in violation of Title 18, United States Code, Section 371 (Count One), and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a) and 17 C.F.R. Section 240.10b-5 (Count Two). Defendant admits that he committed the crimes specified in these counts and is in fact guilty of each one.

    2.    Penalties

Defendant faces the following maximum penalties on Count One of the Indictment: incarceration for five years; supervised release for three years; a fine of $250,000, or twice the gross gain/loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment. Defendant faces the following maximum penalties on Count Two of the Indictment: incarceration for 20 years; supervised release for three years; a fine of $5 million; a mandatory special assessment of $100; restitution, and forfeiture to the extent charged in the Indictment.

Defendant understands that, if he is not a United States citizen, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3. <u>Sentencing Guidelines</u>

The United States Attorney will take the position that, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 34:

a) Defendant's base offense level is 7, because Defendant is pleading guilty to an offense of conviction referenced to USSG § 2B1.1 that has a statutory maximum term of imprisonment of 20 years or more (USSG § 2B1.1(a)(1));

b) Defendant's offense level is increased by 26, because the intended loss or gain from the offenses of conviction and related conduct is more than $150,000,000 but not more than $250,000,000 (USSG §2B1.1(b)(1)(N);

c) Defendant's offense level is increased by 2, because the offenses involved 10 or more victims (USSG § 2B1.1(b)(2)(A)(i));

d) Defendant's offense level is increased by 2, because a substantial part of the fraudulent scheme was committed from outside the United States, and the offense involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(B) and (C)); and

e) Defendant's offense level is decreased by three, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

Defendant agrees with respect to the application of the USSG that: Defendant's base offense level is seven; Defendant's offense level is increased by 2 because the offenses involved 10 or more victims; Defendant's offense level is increased by 2 because a substantial part of the fraudulent scheme was committed from outside the United States, and the offense involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means; and Defendant's offense level is decreased by three because Defendant has accepted responsibility for his crimes. Defendant and the United States Attorney otherwise have no agreement with respect to the application of the Sentencing Guidelines.

Defendant understands that the Court is not required to follow this calculation, and that Defendant may not withdraw his guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

2

Defendant also understands that the government will object to any reduction in his sentence based on acceptance of responsibility if: (a) at sentencing, Defendant does not clearly accept responsibility for the crimes he is pleading guilty to committing; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence to the Court:

   a) incarceration at the low end the Guidelines sentencing range as calculated by the United States Attorney in Paragraph 3;

   b) a fine within the Guidelines sentencing range as calculated by the United States Attorney, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

   c) 24 months of supervised release;

   d) a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court by the date of sentencing;

   e) restitution in an amount to be determined by the Court at sentencing; and,

   f) forfeiture as set forth in Paragraph 6.

5. Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge his conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that his conviction or sentence should be overturned.

Defendant understands that he has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

3

a) He will not challenge his conviction on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) Defendant will not challenge any prison sentence of 188 months or less or any court orders relating to forfeiture, restitution, fines or supervised release. This provision is binding even if the Court's Guidelines analysis is different than the one in this Agreement.

The U.S. Attorney agrees that, regardless of how the Court calculates Defendant's sentence, the U.S. Attorney will not appeal any sentence of imprisonment of 151 months or more.

Defendant understands that, by agreeing to the above, he is agreeing that his conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge his conviction and sentence, regardless of whether he later changes his mind or finds new information that would have led him not to agree to give up these rights in the first place.

Defendant acknowledges that he is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that his lawyer rendered ineffective assistance of counsel, or that the prosecutor engaged in misconduct serious enough to entitle Defendant to have his conviction or sentence overturned.

6. Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a. $4,816,469.55 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

b. All funds on deposit in the following bank and brokerage accounts:

(i) Blue Ocean International Bank LLC account in the name of Wintercap SA ending in x5200;

(ii) Apex Clearing Corp. accounts in the name of Wintercap SA ending in x5017 and x5018;
(iii) Wedbush Securities account in the name of Wintercap SA ending in x7572;
(iv) Interactive Brokers account in the name of Wintercap SA ending in x8760;
(v) Haywood Securities account in the name of Wintercap SA ending in x3778-U and x3778-C;
(vi) Bank of Montreal accounts in the name of Wintercap SA ending in x0495 and x8405;
(vii) Peter Pesic & Co. Securities account in the name of Wintercap SA ending in xC017;
(viii) Maubank Ltd. account in the name of Wintercap SA ending in x6642;
(ix) Tendall Capital Markets account in the name of Wintercap SA ending in x1006;
(x) Prometheus Capital Finance account in the name of Wintercap SA ending in x0013
(xi) Noor Bank accounts in the name of [redacted] ending in x0018, x0039, x0051, and x0073;
(xii) CIM Banque accounts ending in x5000 and x5001 in the name of [redacted];
(xiii) St. Gallen Kantonalbank AG accounts in the name of Wintercap SA ending in x2002, x2001, x2000; and,
(xiv) Banque Populair Auvergne Rhone Alpes account in the name of Roger Knox ending in x9213 and x9927.

   c. All real property located at the following addresses:

(i) 11 Route du Village, Finhaut, Switzerland;
(ii) 19 Route du Village, Finhaut, Switzerland;
(iii) 83 Hawthorne Crescent, West Drayton, United Kingdom; and,

Subject to the paragraph below regarding real property and bank accounts, Defendant admits that the above-listed real property and accounts, as well as the $4,816,469.55 money judgment, are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds of Defendant's offense. The $4,816,469.55 money judgment will be first satisfied with any forfeited funds or properties. The Defendant agrees that satisfaction of the money judgment shall not be a bar to forfeiture of directly forfeitable assets at any time.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment listed above represents the amount of proceeds that the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets

of Defendant, including those listed in this plea agreement, up to the value of the now missing directly forfeitable assets.

With respect to the real property and bank accounts set forth above, Defendant has until 90 days prior to sentencing to compile and present evidence to the government demonstrating that any of above-listed assets are not subject to forfeiture, subject to the requirement that Defendant must first use any and all money contained in the above-listed accounts or sale proceeds from the real property as substitute assets to satisfy the $4,816,469.55 money judgment *before* challenging the forfeiture of any particular item of real property or bank accounts. Defendant must also assist the United States in re-patriating assets to satisfy the money judgment.

Defendant agrees to consent to the entry of orders of forfeiture for the money judgment, for property forfeited as substitute assets, and other such property set forth above, subject to the conditions of the preceding paragraph. Defendant further waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States. Any disputes between the parties will be resolved by the Court at either sentencing or a forfeiture hearing.

In addition, Defendant understands that the United States may also seek an order of forfeiture of additional assets, including, but not limited to, the following on the grounds that they constitute, or are derived from, proceeds of Defendant's offense or are substitute assets that may be used to satisfy the money judgment:

(i) Apartment 4, LaCordee, Les Bossons, Chamonix, France;
(ii) Property No. 6, Chemin L'Adray, Switzerland;
(iii) 4-1 Via Sur Luga, Colletta di Castleblanco, Italy;
(iv) Banque Raiffeisen account in the name of ████████;
(v) Credit Suisse account in the name of ████████;
(vi) CRCAM des Savoie account in the name of Roger Knox ending in x1201, x2678, x7801, x0022, x5084;
(vii) Banque Raiffeisen account in the name of Roger Knox ending in x2217 and x0639;
(viii) Bank Cantonal Geneve account in the name of Roger Knox;
(ix) Banque Raiffeisen account in the name of ████████;
(x) Corna Banca account ending in x6484;
(xi) Lloyds Bank PLC account ending in x4224; and,
(xii) Barclays Bank PLC account ending in x4923.

Defendant agrees to assist fully in the forfeiture of the foregoing assets, including to repatriate the assets to the United States. Defendant agrees to promptly take all steps necessary to

pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

Without limiting the generality of the foregoing, Defendant hereby specifically waives and releases Defendant's claims to any assets seized by, or turned over to, the Federal Bureau of Investigation.

7.  Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to his criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.  Breach of Plea Agreement

Defendant understands that if he breaches any provision of this Agreement, Defendant cannot use that breach as a reason to withdraw his guilty plea. Defendant's breach, however, would give the U.S. Attorney the right to be released from his commitments under this Agreement, and would allow the U.S. Attorney to pursue any charges that were, or are to be, dismissed under this Agreement.

If Defendant breaches any provision of this Agreement, the U.S. Attorney would also have the right to use against Defendant any of Defendant's statements, and any information or materials he provided to the government during investigation or prosecution of his case. The U.S. Attorney would have this right even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Finally, if Defendant breaches any provision of this Agreement, he thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\* \* \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Eric S. Rosen

Sincerely,

ANDREW E. LELLING
United States Attorney

By: _____
STEPHEN E. FRANK
Chief, Securities and Financial Fraud Unit
JORDI DE LLANO
Deputy Chief, Securities and Financial Fraud Unit

_____
ERIC S. ROSEN
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyers and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyers have given me and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Roger Knox
Defendant

Date: 9/13/19

We certify that Roger Knox has read this Agreement and that we have discussed what it means. We believe Roger Knox understands the Agreement and is entering into it freely, voluntarily, and knowingly. We also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
John Pappalardo, Esq.
Mark A. Berthiaume, Esq.
Attorneys for Defendant

Date: 9/16/19

9